## HOT SPRING COUNTY MEDICAL CENTER, et al.  *v.*
## ARKANSAS RADIOLOGY AFFILIATES, P.A.,
### and Richard E. Kremp, M.D.

CA 08-16                                                288 S.W.3d 676

Court of Appeals of Arkansas
Opinion delivered October 8, 2008

*Friday, Eldredge & Clark, LLP,* by: *Bruce B. Tidwell,* for appellants.

*Hurst, Morrissey & Hurst, PLLC,* by: *Travis J. Morrissey* and *Q. Byrum Hurst, Jr.,* for appellees.

JOHN B. ROBBINS, Judge. Appellees Arkansas Radiology Affiliates, P.A., and Richard E. Kremp, M.D., filed an action against appellants Hot Spring County Medical Center and its agents in circuit court, alleging among other things that the appellants breached a contract between the parties. Hot Spring County Medical Center subsequently filed a motion to stay pending arbitration, asking the trial court to submit the appellees' claims to arbitration pursuant to a provision in the parties' contract. The trial court entered an order denying appellants' motion on the basis that the parties' agreement to arbitrate was unenforceable due to a lack of mutuality of obligation. Hot Spring County Medical Center now appeals from that order, arguing that the trial court erred in concluding that mutuality of obligation was lacking. We agree, and we reverse and remand.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *IGF Ins. Co. v. Hat Crook P'ship*, 349 Ark. 133, 76 S.W.3d 859 (2002). Our review of the trial court's denial of a motion to compel arbitration is de novo. *Id.*

On September 17, 2003, Hot Spring County Medical Center entered into a Professional Services Agreement with Arkansas Radiology Affiliates for the provision of radiology services. Richard Kremp, M.D., is the sole owner of Arkansas Radiology. Under the agreement, Arkansas Radiology was responsible for arranging for radiology services as reasonably required in connection with all inpatient and outpatient services provided at the hospital.

On March 27, 2007, Arkansas Radiology filed its complaint against Hot Spring County Medical Center and its representatives. The complaint alleged that as a result of appellants' actions and conduct, including a lack of cooperation in providing adequate services to patients, appellants had breached the parties' contract. The complaint further alleged a breach of implied duty of good faith and fair dealing, and unfair trade practices. Finally, the complaint alleged defamation on the basis that the appellants had made public and malicious untrue assertions regarding Dr. Kremp's competency and ability to perform radiology services. In their complaint, the appellees prayed for a jury trial.

On July 12, 2007, Hot Spring County Medical Center filed its motion to stay pending arbitration, wherein it asked the circuit court to compel arbitration and retain jurisdiction of the pending case only for the purpose of entering an order confirming the decision of the arbitrator. In bringing its motion, Hot Spring

County Medical Center relied on the following provision of the Professional Services Agreement:

> **Arbitration.** Any controversy or claim arising out of, or relating to, this Agreement, or the breach thereof, shall be settled by arbitration in the City of Malvern in accordance with the rules then existing of the American Health Lawyers Association and the judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Arkansas Radiology responded to the motion to stay pending arbitration on July 25, 2007, wherein it resisted arbitration of its claims. It relied on the "Repayment obligation" of the parties' contract, which provides:

> In the event the Group [appellees] has at the end of the six (6) month period received any subsidy payments, Group will be obligated to repay such subsidy to Hospital [appellant] with interest at the then prime rate of interest as published in the Wall Street Journal plus one percent (1%) per annum on the unpaid principal balance, due and payable on or before the first anniversary of the date the Group's Physician begins practice. Provided however, Hospital and Group agree that repayment of such excess subsidy may, in the alternative, be accomplished by Group requiring its physician employee to remain in and serve the community for a period of one (1) year beginning on the first anniversary date the Group's Physician begins practice, with one-twelfth (12th) of such amount being satisfied per month. Nothing in this section shall be construed to entitle Group to receive subsidy payments from Hospital after the first six (6) months of this agreement. *If Group's Physician elects to not remain in the community in order to fulfill the repayment obligation, Group shall execute a Promissory Note for the entire amount owed to the Hospital in the form attached as Exhibit C.* (emphasis added).

The Promissory Note (Exhibit C) contains the following provisions:

> Upon default, the Payee may employ an attorney to enforce the Payee's rights and remedies pursuant to this Note, and the Maker agrees to pay to the Payee the actual costs incurred for reasonable expenses (including attorneys' fees) incurred by the Payee in exercising any of the Payee's rights and remedies upon default.

. . . .

If any provision or portion of this Note shall, to any extent, be deemed invalid or unenforceable, the remainder of this Note shall not be affected thereby, and each provision of this Note shall be valid and enforceable to the fullest extent permitted by law.

The Maker hereby waives presentment for payment, demand, protest and notice of dishonor, and all defenses on the ground of extensions of time for the payment hereof which may be given by the Payee to the Maker or to anyone who has assumed the payment of this Note.

Arkansas Radiology contended that the above language in the Promissory Note reserved rights and remedies to Hot Spring County Medical Center that are normally associated with collection through litigation, and thus there was no mutuality of obligation to arbitrate. Arkansas Radiology further relied on certain language in a proposed, but unexecuted, "Severance and Release Agreement" that had been drafted by Hot Spring County Medical Center as evidence of the hospital's intention not to pursue arbitration of the present dispute.

In the trial court's order denying arbitration, the trial court ruled:

That the Motion to Stay Pending Arbitration is denied because the language in the Promissory Note attached as Exhibit "C" to the "Professional Services Agreement" between the parties which reads that the Note "shall be valid and enforceable to the fullest extent permitted by law" results in the agreement to arbitrate contained in the Professional Services Agreement being unenforceable due to a lack of mutuality of obligation.

On appeal, Hot Spring County Medical Center argues that when applying the principles related to arbitration, there was no lack of mutuality of obligation and thus the trial court erred by refusing to enforce the parties' agreement to arbitrate. We agree.

The supreme court has held that arbitration is simply a matter of contract between the parties. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 64 (2004). Stated differently, the question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Id.* The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, (5) mutual obligations. *Foun-*

*dation Telecom., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). The only issue in the present case is that of mutual obligations. The supreme court has recognized that mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Id.*

In *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001), our supreme court wrote:

> This court has oft recognized that as a matter of public policy, arbitration is "strongly favored." Arbitration is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. Significantly, we have also held that arbitration is a matter of contract between parties.
>
> . . . .
>
> Accordingly, this court will give effect to the parties' intent as evidenced by the arbitration agreement itself. In light of the policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement. In other words, any doubts and ambiguities of coverage will be resolved in favor of arbitration.

344 Ark. at 662, 42 S.W.3d at 556-57 (citations omitted).

In the case at bar, Hot Spring County Medical Center correctly asserts that the arbitration clause contained in the parties' contract unambiguously provides that both parties are bound by arbitration should a claim arise out of the agreement. We agree with appellants that this was the clear intention of the parties and that there were no additional provisions demonstrating a lack of mutuality of obligations. The trial court based its decision on the language in the attached Promissory Note stating that the note "shall be valid and enforceable to the fullest extent permitted by law." However, this language should be read in proper context, and it appears in the note's severability clause, a provision routinely seen as boilerplate in promissory notes and other contracts.

Severability clauses are not aimed at the scope of remedies, but rather to preserve the enforceability of the balance of a contract when some of its provisions are held unenforceable. This severability clause does not affect the parties' contractual agreement to arbitrate, as that agreement would still be binding on Hot Spring County Medical Center in the event of a default. This case is unlike the situation in *Tyson Foods, Inc. v. Archer, supra,* where the supreme court held there was a lack of mutual obligation where the contract provided that one of the parties "may also pursue any other remedies at law or equity." In the present case, neither the language relied on by the trial court nor any other language in the Promissory Note extended to the appellants the right to pursue any remedies other than arbitration.

■ Moreover, we decline the appellees' invitation to affirm the trial court on the alternate basis that the Severance and Release Agreement afforded the appellants other remedies available at law or equity. That proposed agreement was prepared by the appellants in an attempt to cancel the Professional Services Agreement and settle the parties' disputes before the appellees brought its action, but was never signed by either party. The appellees correctly assert that among the provisions in the Severance and Release Agreement is a provision affording remedies at law or equity to the appellants in the event the appellees breach a portion of that agreement. However, that agreement was never executed, and at any rate the proposed remedies at law and equity would have only pertained to a breach of the Severance and Release Agreement and not the Professional Services Agreement at issue in this case. Because there were no agreements between the parties that altered their mutual obligation to settle any claim by arbitration as provided in the Professional Services Agreement, we hold that the trial court erred as a matter of law in denying the appellant's motion to submit the case to arbitration.

Finally, the appellants concede that any tort claims advanced in the appellees' complaint are not subject to arbitration pursuant to Ark. Code Ann. § 16-108-201(b)(2) (Repl. 2006). However, appellants correctly acknowledge that Arkansas Code Annotated section 16-108-202(d) (Repl. 2006) provides, "Any action or proceeding involving an issue subject to arbitration shall be stayed if any order for arbitration or any application therefor has been made under this section, or, if the issue is severable, the stay may be with respect thereto only." Pursuant to this subsection, our

reversal only pertains to the appellee's breach of contract claims, which shall be stayed and ordered to arbitration.

Reversed and remanded.

MARSHALL and VAUGHT, JJ., agree.